JEFFER, MANGELS, BUTLER & MARMARO LLP
JOHN A. GRAHAM (Bar No. 71017), jag@jmbm.com
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067-4308
Telephone: (310) 203-8080
Facsimile: (310) 203-0567

Attorneys for Secured Creditors DLC Holdings, LLC and
Charles Brennan

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>**NGTV, a California corporation,**<br><br>Debtor and Debtor in Possession. | CASE NO. 2:10-bk-16897-SB<br><br>Chapter 11<br><br>**OBJECTION TO REVISED MOTION OF DEBTOR IN POSSESSION FOR ORDER (1) APPROVING SALE PROCEDURES AND BID PROTECTIONS, INCLUDING EXPENSE REIMBURSEMENT, IN CONNECTION WITH THE SALE OF CERTAIN ASSETS OF THE DEBTOR; (2) SCHEDULING AN AUCTION AND A HEARING TO CONSIDER APPROVAL OF SALE; (3) APPROVING NOTICE OF AUCTION AND HEARING ON APPROVAL OF SALE; (4) APPROVING THE ASSET PURCHASE AGREEMENT WITH THE STALKING HORSE BIDDER; (5) APPROVING THE RIGHT TO CREDIT BID UNDER SECTION 363(K); APPROVING THE PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; AND (7) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**<u>Hearing</u>**<br>Date: July 20, 2010<br>Time: 11:00 a.m.<br>Place: Courtroom 1575<br>255 E. Temple St.<br>Los Angeles, CA 90012 |

PRINTED ON
RECYCLED PAPER

7149659v1

Secured Creditors DLC Holdings, LLC ("DLC"), and Charles Brennan ("Brennan") (DLC and Brennan are collectively referred to herein as "DLC/Brennan") respectfully submit their Objection (the "Objection") to the *Revised Motion of Debtor in Possession for Order (1) Approving Sale Procedures and Bid Protections, Including Expense Reimbursement, in Connection with the Sale of Certain Assets of the Debtor; (2) Scheduling an Auction and a Hearing to Consider Approval of Sale; (3) Approving Notice of Auction and Hearing on Approval of Sale; (4) Approving the Asset Purchase Agreement with the Stalking Horse Bidder; (5) Approving the Right to Credit Bid Under Section 363(k); Approving the Procedures for the Assumption and Assignment of Certain Executory Contracts; and (7) Granting Related Relief* (the "Motion") filed by NGTV, a California corporation, the debtor and debtor in possession herein (the "Debtor").

## I.

## INTRODUCTION

By the Motion, Debtor requests Court authority to, among other things, sell substantially all of Debtor's assets (the "Assets") to secured creditor, Rebel Media, Ltd. ("Rebel") for the purchase price of at least $1,660,000.00 (the "Sale"). Debtor previously filed a motion to approve sale procedures, etc., on or about June 22, 2010 (the "Prior Sale Procedures Motion"). At a hearing held on shortened notice on June 28, 2010, the Court declined to approve the Prior Sale Procedures Motion, based on numerous objections raised both by DLC and the Court. Significantly, the Court and DLC were concerned that the proposed sale was of no benefit to creditors. In the revised Motion, Rebel is to pay an additional $100,000 "for creditors." Yet, the Motion is silent as to whether these funds may be utilized to pay administrative claims, resulting in no payment to non-administrative creditors.

Essentially, Debtor asks that this Court involve itself in the business of foreclosure, when there is no need for Court involvement. Additionally, the Motion is procedurally deficient, and fails to remedy some of DLC's and the Court's concerns raised at the hearing on the Prior Sale Procedures Motion. In support of this Objection, DLC respectfully represents as follows:

PRINTED ON
RECYCLED PAPER

7149659v1

- 2 -

## II.

## **STATEMENT OF FACTS**

DLC is a secured creditor of the Debtor by virtue of secured loans extended to the Debtor prepetition. A true and correct copy of the proof of claim filed in this case by DLC (the "DLC Proof of Claim") is attached hereto as Exhibit "1." On about November 28, 2007, the Debtor obtained a loan from DLC in the original principal sum of $1,000,000 (the "DLC Loan"), evidenced by a Purchase Agreement and secured by a 10% Senior Secured Promissory Note (the "DLC Note"). A true and correct copy of the Purchase Agreement between DLC and the Debtor is attached the DLC Proof of Claim as Exhibit A. A true and correct copy of the Note is attached to the DLC Proof of Claim as Exhibit B. The Loan is additionally evidenced by a letter from the Debtor to DLC, dated March 31, 2009, a true and correct copy of which is attached to the DLC Proof of Claim as Exhibit C.

Pursuant to the terms of the DLC Loan, the entire unpaid principal balance, together with unpaid interest thereon, was due and payable on the Maturity Date of October 1, 2008. From and after the inception of the DLC Loan on November 28, 2007, Debtor has failed to make any payments on account of the DLC Loan. As of June 30, 2010, Debtor owes on the DLC Loan, and is obligated to pay DLC the total amount of $1,336,383.56, plus attorneys fees in accordance with the terms of the DLC Note.

DLC purchased its senior secured promissory Note, along with other senior secured promissory note holders. It was DLC's understanding that its Note was part of the group of senior secured promissory notes, and that UCC-1 financing statements filed in connection with the other senior secured promissory notes would include and apply to DLC's Note in that directors and officers of NGTV assured DLC that it was protected and would have an interest *pari passu* and coequal with other senior secured promissory note holders. DLC is continuing to investigate the history and circumstances of the issuance of the senior secured promissory Note and related Purchase Agreement made as of November 28, 2007 by and between NGTV and DLC, and expressly reserves the right to amend this claim to include further information and facts that may be discovered in regard to its investigation and the status of its position as a senior secured creditor in

this case.

On about March 24, 2008, the Debtor obtained a loan from Brennan in the original principal sum of $250,000 (the "Brennan Loan"), evidenced by a Purchase Agreement and Promissory Note (the "Brennan Note"). A true and correct copy of the proof of claim filed in this case by Brennan (the "Brennan Proof of Claim") is attached hereto as Exhibit "2." A true and correct copy of the Purchase Agreement between Brennan and Debtor is attached to the Brennan Proof of Claim as Exhibit A. A true and correct copy of the Brennan Note is attached to the Brennan Proof of Claim as Exhibit B. The Brennan Loan is additionally evidenced by a letter from the Debtor dated March 31, 2009, a true and correct copy of which is attached to the Brennan Proof of Claim as Exhibit C.

Pursuant to the terms of the Brennan Loan, the entire unpaid principal balance, together with unpaid interest thereon, was due and payable on the Maturity Date of May 24, 2008.

Since the inception of the Brennan Loan on March 24, 2008, Debtor has failed to make any payments on account of the Brennan Loan. As of the Petition Date, February 25, 2010, Debtor owes on the Brennan Loan, and is obligated to pay Brennan, the total amount of $346,301.37.

### III.

### OBJECTIONS

**A.    Standards for Approval of Sale Under Section 363 of the Bankruptcy Code**

To obtain approval in a chapter 11 case before confirmation of a plan of a sale of substantially all of the assets of the estate, the debtor in possession must show a sound business reason (*Committee of Equity Security Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, (2d Cir. 1983), and *In re Encore Healthcare Assocs.*, 312 B.R. 52 (Bankr. E.D. Pa. 2004)); that there has been adequate and reasonable notice (*In re North Atlantic Millwork Corp.*, 155 B.R. 271 (Bankr. D. Mass. 1993) (failure to disclose adequately implications of sale is ground for denial)); and that the sale has been proposed in good faith (*In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986)). Appeasement of the loudest creditor does not constitute a good business reason.

*See generally In re Chrysler LLC*, 576 F.3d 108 (2d Cir. 2009), judgment vacated as moot, 175 L. Ed. 2d 614 (2009) , appeal dismissed, 592 F.3d 370 (2d Cir. 2010) (court must find good business reason for the sale so as to prevent a bullying creditor from forcing a sale to cash out quickly, leaving other creditors without chapter 11's protections).  These factors are considered to assure that the interests of all parties in interest are protected and that the sale is not for an illegitimate purpose. 3-363 COLLIER ON BANKRUPTCY ¶ 363.02.

### B.    The Sale Provides No Benefit to Creditors

In the revised Motion, Rebel is to pay $100,000 in cash to the estate "for creditors." Motion at 9, ln. 23; and $60,000 in cash for administrative professional fees. *Id.* at ln. 24-25.  The Motion, however, is silent as to whether administrative professional fees exceeding $60,000 may be paid out of the $100,000 designated for creditors.  The Motion is also silent as to the amount of administrative professional fees accrued in this case thus far.  Assuming that the professional fees exceed $60,000, professional fees would be paid prior to any distribution to creditors.  Thus, the entirety of the $100,000 cash payment to creditors could feasibly end up in the hands of the professionals employed in this case, and non-administrative creditors would receive nothing from the Sale.  Therefore, because the Sale provides non-administrative creditors with no recognizable benefit, the Sale is not in the best interests of creditors.

### C.    There Is Insufficient Information Regarding Marketing of the Assets

In connection with the Prior Sale Procedures Motion, DLC objected on the grounds that there was inadequate marketing and publication of the Sale, *i.e.*, Debtor did not propose publication of the Sale of the Assets in any industry-specific publication. According to the Motion, Debtor "intends" to notice the Sale, auction and Sale hearing in the *Los Angeles Times*, the *New York Times*, the *Wall Street Journal*, "on the internet, and in such other publication reasonably requested by parties in interest or required by the Court" (Motion at 17, ln. 1-4).  However, the trade publication and the internet sites upon which Debtor intends to publish the sale, etc., are not specified in the Motion.  As it is Debtor's burden to prove that notice was adequate and reasonable, Debtor should be required to specify in which industry-specific publication(s) and internet sites the sale will be published.

Moreover, the Motion does not provide that Debtor will file a *Notice of Sale of Estate Property* (Local Bankr. R. Form 6004-2), which is required by Local Bankr. R. 6007-1(f):

> **Publication of Notice of Sale of Estate Property**. Whenever the trustee or debtor in possession is required to give notice of a sale or of a motion to sell property of the estate pursuant to FRBP 6004 and 2002(c), an additional copy of the notice and court-approved form F 6004-2, Notice of Sale of Estate Property must be submitted to the clerk at the time of filing for purposes of publication by the clerk on the court's website.

Not only is the filing of the form required under the Local Rules, it is also necessary for the proper publication of the Sale on the Court's website.

### D.    There Is No Showing of Benefit to the Estate at this Time in Support of the Expense Reimbursement

If Rebel is not the successful bidder, Debtor points out in the Motion that Rebel will not seek a break-up fee. Motion at 27, ln. 13-14. However, if Rebel is not the successful bidder, the Motion seeks authority of the Court to reimburse Rebel in the approximate amount of $200,000 for "certain loans" made by Rebel to the Debtor in connection with the chapter 11 case (the "Expense Reimbursement"). Motion at 4, ln. 7-9 and 18, ln. 11-14. In the Motion, it is alleged that the $200,000 Expense Reimbursement consists of Rebel's "actual out of pocket expense incurred in connection with the chapter 11 case." Motion at 12, ln. 15-16. It is unclear, however, that Rebel is entitled to the proposed $200,000 Expense Reimbursement at this time.

According to the Motion, Rebel loaned the Debtor a $50,000 retainer for the Debtor's bankruptcy counsel, and "agreed to fund $144,000 necessary to satisfy the landlord's post-petition rent obligations through July 31, 2010." Motion at 11, ln. 23-26. However, "[u]pon Court approval thereof, Rebel will make that loan." Thus, Rebel has not actually funded the $144,000 loan to Debtor.

In the *Lehigh Coal* case, which was relied upon by the Debtor in the Motion, an expense reimbursement to the stalking horse credit bidder was disapproved by the Court. *In Re Lehigh Coal and Navigation Company*, 2010 Bankr. LEXIS 1187 (M.D.Pa. 2010). The court in *Lehigh Coal* explained, "[i]n regard to the provision allowing expense reimbursement and the

PRINTED ON RECYCLED PAPER

objections thereto, I am aware that it is Movant's (Debtor's) burden to demonstrate that expense reimbursement to the stalking horse is an 'actual, necessary' expense of 'preserving the estate.' *In re Reliant Energy Channelview, LP*, 594 F.3d 200, 206 (3rd Cir. 2010). I have been given no information to make that finding." *Lehigh Coal* at 2010 Bankr. LEXIS 1187 *6.

Here, the Motion does not provide any argument as to why the Expense Reimbursement to Rebel is an actual, necessary expense of preserving the estate. In fact, the proposed loan to Debtor to pay the landlord has not even been made by Rebel. Thus, the Expense Reimbursement should not be authorized by the Court at this time.

### E. Under the Intercreditor Agreement, DLC Is Entitled to Its Pro Rata Share of the Credit Bid

Lastly, to the extent that the Court approves the Motion, nothing in the order on such Motion should interfere with, alter, affect, impair or otherwise modify the rights of DLC pursuant to the Intercreditor Agreement referenced in the Motion at pages 14-16; in particular, paragraph 3(g), which provides as follows:

> 3(g)    Credit Bid(s). Any Senior Noteholder may make a credit bid at any foreclosure sale or other sale of any of the Collateral; provided, that the other Senior Noteholders receive a cash payment as a result of such credit bid equal to their ratable share of the consideration that would have been received under this Agreement had such credit bid been paid in cash.

## IV.

## CONCLUSION

Based upon the foregoing, and due to the procedural and substantive deficiencies in the Motion set forth herein, the Court should deny the Motion.

DATED: July 19, 2010                JEFFER, MANGELS, BUTLER & MARMARO LLP

By: /s/ John A. Graham
JOHN A. GRAHAM
Attorneys for Secured Creditors DLC Holdings, LLC and Charles Brennan

7149659v1

- 7 -